## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

     Plaintiff,

     v.                       CASE NO.  23-3182-JWL

(FNU) HARRED, et al.,

     Defendants.

### MEMORANDUM AND ORDER

Plaintiff brings this pro se case under 42 U.S.C. § 1983.  He is currently incarcerated at the Larned Correctional Facility in Larned, Kansas.  However, the allegations forming the basis of his claims occurred at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas.

The Court entered a Memorandum and Order to Show Cause (Doc. 13) ("MOSC") granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC.  Plaintiff filed an Amended Complaint (Doc. 17).  On November 27, 2023, the Court screened Plaintiff's Amended Complaint and found that the proper processing of Plaintiff's medical and retaliation claims could not be achieved without additional information from appropriate officials of the EDCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  The Court ordered the KDOC officials to prepare and file a *Martinez* Report, stating that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 19, at 3.)   The *Martinez* Report (Doc. 24) (the "Report") has now been filed and Plaintiff's Amended Complaint is before the Court for screening in light of the Report.  The Court's screening standards are set forth in the MOSC.

## I.  Nature of the Matter before the Court

The underlying facts are set forth in detail in the Court's MOSC and the Court's Memorandum and Order at Doc. 19.  In summary, Plaintiff claims he received inadequate medical care after he injured his shoulder.  He further claims that he was retaliated against for filing this lawsuit.

The Report provides the following chronology of events:

Waterman, for the first time, sought medical attention on July 5, 2022, expressing continuous pain in his right shoulder while denying any recent injury or trauma.

On August 22, 2022, Waterman complained of pain to his right shoulder and requested an x-ray.

On September 16, 2022, Waterman was given an appointment to meet with Nurse M. Tunnell, APRN, to discuss his x-ray request.

On September 17, 2022, Waterman . . . received treatment and an x-ray date was scheduled.

On September 20, 2022, an x-ray was taken of Mr. Waterman's right shoulder.  The x-ray results showed normal alignment and mineralization with no fracture or aggressive bony lesions.  There were no signs of other degenerative changes.

On November 2, 2022, Waterman reported having limited range of motion due to pain so he was given an assessment.  However, during that assessment, the doctor observed that his shoulders were symmetrical, there were no deformities, and he did not grimace throughout the assessment.

On November 2, 2022, Waterman requested a medical mattress due to his shoulder pain.  However, he was told that medical does not give orders for "medical mattresses."  On that same day, he was scheduled an appointment to meet with Carmen Baynham, APRN, for a follow upon on his medical mattress request.

On November 3, 2022, Baynham educated Waterman regarding the plan of care, medications, and self-care measures that he would be required to follow. However, Waterman became argumentative when the plan of care was discussed. His demand for a medical mattress persisted.

On November 4, 2022, Waterman returned to the nurse's office stating, "Doing physical therapy on my shoulder will only inflame it more.  I need an MRI to see the Doctor."

Waterman did not receive an MRI at that time because less-intrusive treatments must be performed before an MRI can be requested.  Said treatments include activity-restrictions and physical therapy.

On November 4, 2022, Waterman returned to the nurse's office stating, "he does not feel like Carmen Baynham was qualified to care for him."  He further argued that physical therapy was not working and that he needed an MRI and someone more capable of caring for him.

On November 9, 2022, Waterman reported that he wanted his pain medication to stop because it was not working.  On that day, the medical room was consulted, and it was discovered that Waterman had not taken a single dose of his medication.

On December 7, 2022, a utilization management progress note was created by the KDOC related to approval of an MRI request for Mr. Waterman's right shoulder.  Said approval was within the non-urgent thirty-day timeline.

On December 31, 2022, Waterman was assessed, and it was observed that his right shoulder was able to perform a full range of motion with facial grimacing noted.  He also asked about the status of his MRI, and he was told that the MRI has been approved but not yet scheduled.

Waterman was transferred to EDCF on January 23, 2023.

On February 27, 2023, Waterman's MRI was scheduled for March 8, 2023.

Due to an urgent security transport incident, Mr. Waterman's initial MRI appointment was rescheduled from March 8, 2023, to March 20, 2023.

Mr. Waterman's MRI appointment was rescheduled for March 29, 2023, to accommodate an urgent medical transport.

On March 29, 2023, an MRI was performed on Mr. Waterman's right shoulder. . . . The results suggested tendinopathy or partial tear of the supraspinatus.

On August 3, 2023, . . . a bottom bunk restriction was recommended until Mr. Waterman's follow-up with orthopedics.

On August 9, 2023, Mr. Waterman claimed he voluntarily surrendered his bottom bunk to his cellmate and injured his right shoulder while climbing onto the top bunk.   [He]  discussed  with  the  nurse  practitioner  about  changing  his

3

recommendation to an actual bunk bottom restriction.  A medical classification note was generated by the KDOC which confirmed Mr. Waterman's bottom bunk only restriction through November 3, 2023.

Waterman was transferred to Lansing Correctional Facility on October 3, 2023.

On November 3, 2023, Physical Therapy was approved.

On November 9, 2023, Mr. Waterman began physical therapy.

(Doc. 24, at 6-11) (internal paragraph numbers omitted); *see also* Doc. 25 (Exhibit L, consisting of Plaintiff's sealed medical records).

## II.  DISCUSSION

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).  The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 990 (citation omitted).  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id.* at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id.* (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id.* "Instead, a court may need to determine

whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* (citations omitted).

The Court finds that Plaintiff's medical records do not show that he received the functional equivalent of a complete denial of care. Plaintiff received medical visits shortly after he requested them, was offered pain medication, received an x-ray and an MRI, and was offered and given physical therapy. Plaintiff's range of motion was monitored throughout the visits. While Plaintiff objected to physical therapy, that is merely a disagreement with the course of treatment and does not rise to the level of deliberate indifference. Although there may have been a delay in obtaining a bottom bunk restriction, this suggests, at most, mere negligence – not a constitutional violation.

The Court also finds that Plaintiff's allegations fail to state a claim for retaliation. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of

constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff alleges in his Amended Complaint that "Property Officer Shaw has had my legal box since at least 23ʳᵈ of October and refused to send it." (Doc. 17, at 4.)  He further alleges that he was placed in a crisis medical cell "over anxiety caused by my pills Sigular which have been discontinued.  In retaliation all my personal property was left in a four-man cell with three other inmates until Oct 23, 2023." *Id*. at 7.  Plaintiff goes on to state, "Had it not been for this 42 U.S.C. 1983 on EDCF Unit Team and unit managers my property would've been immediately packed up and not left to be stolen." *Id*.

Plaintiff's allegations are conclusory.  He does not assert specific facts supporting those conclusions.  In fact, he seems to allege that the retaliation had more to do with his reaction to the discontinuation of a medication than the exercise of his constitutional rights.  Plaintiff fails to state a claim for retaliation.

## III. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).  The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).  Thus, at this point in the proceedings the Court does not use the Report to resolve

conflicts of fact.  *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").  In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.  Plaintiff has filed responses already (see Docs. 32 and 33) and will be given another opportunity to respond to the Report and to show good cause why dismissal should not be entered.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **April 11, 2024,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS SO ORDERED.**

**Dated March 11, 2024, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**