IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRIAN MICHAEL WATERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 5:23-cv-03182-JWL |
| | ) | |
| GORDON HARROD, M.D., SARAH | ) | |
| MADGWICK, KELLY KNIPP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS GORDON HARROD, M.D., SARAH MADGWICK, AND KELLY
KNIPP'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants Gordon Harrod, M.D., Sarah Madgwick, and Kelly Knipp,

(the "Medical Defendants") by and through undersigned counsel, and respectfully submit

this brief in support of their Motion for Summary Judgment.

**NATURE OF THE CASE**

Plaintiff Brian Waterman alleges the Medical Defendants were deliberately

indifferent to Plaintiff's medical needs in relation to a condition involving Plaintiff's right

shoulder. The relevant events occurred when Plaintiff was incarcerated at Hutchinson

Correctional Facility ("HCF"), El Dorado Correctional Facility ("EDCF"), and Lansing

Correctional Facility ("LCF"), which are operated by the Kansas Department of

Corrections ("KDOC").

1

## STATEMENT OF FACTS

### Hutchinson Correctional Facility (HCF)

1.      On July 11, 2022, Mr. Waterman sought medical attention for his right shoulder, expressing he experienced continuous pain in his right shoulder that he believed was caused by lifting weights. *See* Exhibit E.

2.      On August 22, 2022, Mr. Waterman complained of pain to his right shoulder and requested an x-ray. *See* Exhibit C.

3.      On September 16, 2022, Mr. Waterman had an appointment with Nurse M. Tunnell, APRN, to discuss his x-ray request. *See* Exhibit B, ¶ 7.

4.      On September 17, 2022, Mr. Waterman reported that he believed that his shoulder was injured due to heavy lifting in the gym. He received an evaluation, and an x-ray date was scheduled. *See* Exhibit C.

5.      On September 20, 2022, an x-ray was taken of Mr. Waterman's right shoulder. *See* Exhibit B, ¶ 9.

6.      The x-ray results showed normal alignment and mineralization with no fracture or aggressive bony lesions. There were no signs of other degenerative changes. *See* Exhibit B, ¶ 9.

7.      On November 2, 2022, Mr. Waterman had another provider appointment during which he reported having limited range of motion due to pain so he was given an assessment. However, during that assessment, the Doctor observed that his shoulders were symmetrical, there were no deformities, and he did not grimace throughout the assessment. *See* Exhibit C.

8.      On November 2, 2022, Mr. Waterman requested a medical mattress due to his shoulder pain. However, he was told that medical does not give orders for "medical mattresses." On that same day, he was scheduled for an appointment to meet with Carmen Baynham, APRN, for a follow up on his medical mattress request. *See* Exhibit C.

9.      On November 3, 2022, Baynham educated Mr. Waterman regarding the plan of care, medications, and self-care measures that he would be recommended to follow. However, Mr. Waterman became argumentative when the plan of care was discussed. His demand for a medical mattress persisted. *See* Exhibit C.

10.     On November 4, 2022, Mr. Waterman returned to the nurse's office stating "Doing physical therapy on my shoulder will only inflame it more. I need an MRI to see the Doctor." *See* Exhibit F.

11.     Mr. Waterman did not receive an MRI at that time because less-invasive treatments needed to be performed before an MRI could be requested. Said treatments include activity-restrictions and physical therapy. *See* Exhibit B, ¶ 13., Exhibit N.

12.     On November 4, 2022, Mr. Waterman returned to the nurse's office stating, "he does not feel like Carmen Baynham was qualified to care for him." He further argued that physical therapy would not work and that he needed an MRI and someone more capable of caring for him. *See* Exhibit F.

13.     On November 9, 2022, Mr. Waterman reported that he wanted his pain medication to stop because it was not working. *See* Exhibit G.

14. On November 9, 2022, the medical room was consulted, and it was discovered that Mr. Waterman had not taken a single dose of his proscribed pain medication. *See* Exhibit G.

15. On November 15, 2022, Mr. Waterman refused his pain medication. *See* Exhibit N.

16. On December 7, 2022, a utilization management progress note was created by the KDOC related to approval of an MRI request for Mr. Waterman's right shoulder. Said approval was within the non-urgent thirty-day timeline. *See* Exhibit B, ¶ 16.

17. On December 31, 2022, Mr. Waterman was assessed, and it was observed that his right shoulder was able to perform a full range of motion with facial grimacing noted. *See* Exhibit C.

18. On December 31, 2022, Mr. Waterman also asked about the status of his MRI, and he was told that the MRI has been approved but not yet scheduled. *See* Exhibit C.

19. On January 4, 2023, Mr. Waterman refused "medical treatment for HCP [Health Care Provider] visit for 7 day f/u [follow up] and regarding rt [right shoulder] shoulder pain." Mr. Waterman additionally refused to sign the refusal of treatment form. *See* Exhibit H.

**El Dorado Correctional Facility (EDCF)**

20. On January 23, 2023, Mr. Waterman transferred to EDCF. *See* Exhibit A (KASPER Profile for Brian Waterman).

21. On February 27, 2023, Mr. Waterman's MRI was scheduled for March 8, 2023. *See* Exhibit B, ¶ 20.

22. On March 3, 2023, a utilization management progress note was created by the KDOC related to the approval of an MRI for Mr. Waterman's right shoulder. Due to an urgent security transport incident, Mr. Waterman's initial MRI appointment was rescheduled from March 8, 2023, to March 20, 2023. *See* Exhibit B, ¶ 21.

23. On March 17, 2023, a utilization management progress note was created by the KDOC related to Mr. Waterman's MRI appointment for March 20, 2023. Mr. Waterman's MRI appointment was rescheduled for March 29, 2023, to accommodate an urgent medical transport. *See* Exhibit B, ¶ 22.

24. On March 29, 2023, an MRI was performed on Mr. Waterman's right shoulder at Susan B. Allen Memorial Hospital. *See* Exhibit B, ¶ 23.

25. The MRI results suggested tendinopathy or partial tear of the supraspinatus. *See* Exhibit B, ¶ 23.

26. On July 15, 2023, Mr. Waterman submitted an "Emergency Grievance" relating to his shoulder condition and alleging the Medical Defendants were retaliating against him by not providing adequate medical care. *See* Exhibit J.

27. On August 1, 2023, Mr. Waterman's "Emergency Grievance" was received by the Warden's office. On the same day, the Warden provided Mr. Waterman with his response indicating that his complaint was "not an emergency." *See* Exhibit J.

28. On August 3, 2023, Mr. Waterman had a provider visit to address his right shoulder pain. A bottom bunk restriction and long cuff restriction was recommended until Mr. Waterman's appointment with orthopedics. *See* Exhibit D, ¶ 13.

29.    A bottom bunk restriction is generally determined by the treating health care professional. However, the KDOC generally determines whether a recommendation becomes a requirement as the KDOC are the enforcing actors of said recommendations. *See* Exhibit D, ¶ 13, Exhibit L, ¶ 7.

30.    Kelly Knipp was never asked to remove Mr. Waterman's bottom bunk restriction by Unit Team Manager Little nor any other Unit Team staff. *See* Exhibit D, ¶ 20.

31.    On August 9, 2023, Mr. Waterman had a nurse visit related to his shoulder pain. Mr. Waterman claimed he voluntarily surrendered his bottom bunk to his cellmate and injured his right shoulder while climbing unto the top bunk. Mr. Waterman discussed with the nurse practitioner about changing his recommendation to an actual bunk bottom restriction. A medical classification note was generated by the KDOC which confirmed Mr. Waterman's bottom bunk only restriction through November 3, 2023. *See* Exhibit D, ¶ 14.

32.    On August 10, 2023, Mr. Waterman's Unit team contacted nurses to clarify that Mr. Waterman should only be given a bottom bunk due to his right shoulder pain. *See* Exhibit D, ¶ 15.

33.    Mr. Waterman's bottom bunk restriction was "recommended "and not "required" at the time his bottom bunk was reallocated. For that reason, his bottom bunk was given to another resident in immediate need. However, he received a bottom bunk immediately after he received a "required" bottom bunk restriction. *See* Exhibit D, ¶ 14, Exhibit L, ¶ 8.

34.    On September 11, 2023, Mr. Waterman appealed the Warden's response to the "Emergency Grievance" to the Secretary of Corrections. *See* Exhibit J.

6

35. On September 27, 2023, Mr. Waterman was evaluated by an orthopedist. The orthopedist provided a recommendation of physical therapy. *See* Exhibit I.

36. On October 13, 2023, Darcie Holthaus, Secretary of Corrections Designee provided an unofficial response to Mr. Waterman's Appeal of the "Emergency Grievance." She indicated that Plaintiff's "Emergency Grievance" was not an emergency and Mr. Waterman "is being appropriately treated." *See* Exhibit J, K (Affidavit of Secretary of Corrections, Darcie Holthaus).

**Lansing Correctional Facility (LCF)**

37. On October 3, 2023, Mr. Waterman transferred to LCF. *See* Exhibit A (KASPER Profile for Brian Waterman).

38. On November 3, 2023, physical therapy was approved for Mr. Waterman. *See* Exhibit C.

39. Mr. Waterman alleges Warden, Jesse Howes is responsible for KDOC's retaliation against him. However, Mr. Howes denies the existence of any current or former conflicts between himself and Mr. Waterman. He also denies any claims of retaliation. *See* Exhibit M, ¶ 8-10.

40. On November 9, 2023, Waterman filed an amended complaint alleging that a delay in physical therapy has caused him a serious medical injury. *See* Doc. #17.

41. On November 9, 2023, Mr. Waterman began physical therapy. *See* Exhibit C.

## BACKGROUND

Plaintiff Brian Michael Waterman filed this lawsuit alleging delay of medical treatment provided to him while incarcerated at HCF, EDCF, and LCF. *See* Doc. 17.

7

However, the undisputed facts demonstrate he was provided with appropriate and timely medical treatment. Rather, Mr. Waterman did not agree with the recommended treatment, and at least for a period, refused that treatment.

The undisputed facts demonstrate, on or around July 11, 2022, Mr. Waterman first sought medical attention for pain in his right shoulder that he believed was caused by lifting weights. Statement of Fact ("SOF") ¶ 1. Shortly thereafter, medical providers saw Mr. Waterman and he had an x-ray of his shoulder done. SOF ¶ 5. Mr. Waterman's x-ray showed no abnormalities or signs of degenerative changes. SOF ¶ 6. Mr. Waterman made additional reports of discomfort and was again seen by medical providers who additionally observed no deformities or signs of injury after assessment. SOF ¶ 7. Medical staff provided Mr. Waterman with a plan of care yet, in Mr. Waterman's opinion, the care plan was not sufficient. SOF ¶ 9. Mr. Waterman has since demonstrated a pattern of noncompliance to the care ordered by medical professionals and continuously expressed his difference in opinion over the care he is receiving. SOF ¶ 9. This lawsuit was filed, not because Mr. Waterman was not properly or timely provided with care, but because he does not agree with the plan of care recommended.

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is required under Rule 56 of the Federal Rules of Civil Procedure when pleadings, affidavits, and any discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To determine whether a genuine issue exists, courts will view evidence in the light most favorable to the nonmoving party and will accept only reasonable inferences. See *Allen v. Muskogee*, 119 F.3d 837, 839-40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). Further, any factual dispute must be not only genuine – "such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) – but also material, as determined by substantive law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). Where there is no genuine dispute of material fact regarding just one of the essential elements a plaintiff must prove, then summary judgment must issue in the defendant's favor. See *Sports Unlimited, Inc. v. Lankford Enterprises., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671).

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In this case, Defendants are entitled to summary judgment in their favor because Plaintiff failed to exhaust administrative remedies, Plaintiff cannot show that either Defendant was deliberately indifferent to a serious medical need, Plaintiff has not sufficiently pled an injury submissible under a claim of deliberate indifference and Plaintiff's claim amounts to a difference in opinion.

## ARGUMENTS AND AUTHORITIES

**I.    Mr. Waterman Failed to Exhaust Administrative Remedies Due to Submission of an Unfounded Emergency Grievance.**

Mr. Waterman's claim should be dismissed on the grounds that he failed to exhaust the administrative remedies available to him as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). *Williams v. Corr. Corp. of Am.*, 407 F. App'x 301 (10th Cir. 2011). Specifically, Mr. Waterman submitted an unfounded emergency grievance that did not meet the standards of an emergency, and despite being notified that his grievance was deemed a non-emergency, he failed to follow the normal grievance procedure. Consequently, Mr. Waterman did not properly exhaust his administrative remedies.

Under the PLRA, prisoners must exhaust all available administrative remedies before bringing a lawsuit regarding prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement mandates that prisoners must complete the administrative review process in accordance with the applicable procedural rules defined by the prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Proper exhaustion requires compliance with deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The KDOC grievance procedure allows inmates to bypass the informal resolution stage in specific emergency situations. According to K.A.R. 44-15-106, an inmate may bypass the informal resolution stage if the grievance is classified as an "emergency grievance." An emergency grievance is defined as one where disposition according to the regular time limits would subject the inmate to a substantial risk of

10

personal injury or cause other serious and irreparable harm. In such cases, the inmate must indicate the nature of the emergency on the grievance form and write "emergency" at the top of the form. The grievance is then forwarded immediately to the level at which corrective action can be taken without substantive review and is expedited at every level (K.A.R. 44-15-106).

Mr. Waterman submitted an "Emergency Grievance" in relation to his shoulder condition, alleging that Dr. Harrod was retaliating against him by not providing him with "adequate medical care." Statement of Fact ("SOF") ¶ 26. Mr. Waterman's "Emergency Grievance" was received by the Warden's office, to which the Warden responded, indicating that Mr. Waterman's complaint was "not an emergency." SOF ¶ 27, 36. Mr. Waterman ignored the Warden's classification and appealed the Warden's response of his unfounded "Emergency Grievance" to the Secretary of Corrections, Darcie Holthaus. SOF ¶ 34. In an unofficial response to the appeal, the Secretary of Corrections affirmed the Warden's classification and determined that Mr. Waterman "is being appropriately treated." SOF ¶ 34, 36.

There is no evidence in the record that the forms were resubmitted or that Mr. Waterman pursued the proper administrative remedy after being advised that his "Emergency Grievance" was a non-emergency. Mr. Waterman additionally failed to seek an informal resolution of this grievance in compliance with normal grievance procedures. *See* Affidavit of Darcie Holthaus, Exhibit G. To bypass the steps required under the PLRA and KDOC Grievance Procedures, Mr. Waterman submitted and unfounded "Emergency

11

Grievance" yet was promptly notified that his condition did not qualify for use of the Emergency Grievance Process. SOF ¶ 34, 36.

The Tenth Circuit Court of appeals has held that "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies" and consistently upholds dismissals for failure to exhaust administrative remedies in similar circumstances. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, in *Uzochukwu v. Roody*, the Tenth Circuit affirmed the dismissal of an inmate's § 1983 action for failing to exhaust administrative remedies, noting that the inmate did not complete the grievance process after his emergency grievances were returned as non-emergencies. 472 F. App'x 865 at 867 (10th Cir. 2012). Similarly, in *Craft v. Null*, the plaintiff attempted to utilize the expedited procedure by filing an emergency grievance. 543 F. App'x 778 at 779 (10th Cir. 2013). The emergency grievance was returned to the plaintiff stating that the matter did not involve an emergency. *Id.* The court concluded that once plaintiff's grievance was returned as a non-emergency, that plaintiff was required to restart the administrative process by trying to informally resolve the complaint and resubmit the grievance. *Id.* at 780. Where the plaintiff had not done so, the Tenth Circuit held that the plaintiff did not exhaust his administrative remedies.

As previously stated, there is no evidence in the record indicating that Mr. Waterman resubmitted his grievance or attempted to follow up with an informal resolution. As such, he did not exhaust his administrative remedies.

Mr. Waterman's failure to follow the prescribed grievance procedures after being notified that his "Emergency Grievance" did not meet the criteria for an emergency constitutes a failure to exhaust administrative remedies. *Uzochukwu*, 472 F. App'x 865 (10th Cir. 2012). As established by precedent, an inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Therefore, Mr. Waterman's claim fails as a matter of law and the Medical Defendants are entitled to judgment in their favor.

## II.    Mr. Waterman's Complaint Fails to Comply With The Requirements of Rule 8 of the Federal Rules of Civil Procedure.

With respect to his claim for relief, Mr. Waterman identifies specific individuals he believes to be responsible for the alleged conduct, yet he fails to provide any specific facts which give rise to his allegations of deliberate indifference as against these specific individuals, including Dr. Harrod, Sarah Madgwick, and Kelly Knipp. Mr. Waterman states these Defendants deliberately delayed medical treatment but points to no facts or evidence to indicate such deliberate action by the individual Defendants. It is well documented that Mr. Waterman received consistent medical attention and additionally that he refused medical treatment or failed to comply with such care.

"Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright,* 477 F.3d 1140, 1148 (10th Cir. 2007). The allegations in Mr. Waterman's Complaint should inform each individual defendant "what [he or she] did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what

13

specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007). Mr. Waterman fails to do so. His claims are deficient in as they fail to inform the individual Defendants of what specifically deliberate actions they allegedly undertook, how these alleged actions harmed Mr. Waterman and what specific legal rights he alleges have been violated. Therefore, Mr. Waterman's claims are subject to judgment as a matter of law because they do not comply with the requirements of Rule 8.

Because Mr. Waterman is proceeding pro se, his complaint must be construed liberally. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). However, the generous construction given to a pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). Additionally, Mr. Waterman's pro se status does not relieve him of the duty to comply with the Federal Rules of Civil Procedure. *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Applying these standards, Mr. Waterman fails to comply with the requirements of Rule 8 and fails to establish plausible claims for relief against the Medical Defendants. On these grounds, therefore, the Medical Defendants are entitled to judgment as a matter of law.

### III. Mr. Waterman Cannot Make a Submissible Claim for Deliberate Indifference Due to a Lack of Evidence.

To state a cognizable claim under the Eighth Amendment because of inadequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference is a state of mind that can be inferred from the fact that the risk of harm is obvious. *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811. A delay in medical treatment by itself will not satisfy deliberate indifference. Rather, an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. *Crowley v. Hedgepeth*, 109 F.3d 500 at 502 (8th Cir. 1997). This evidence must show that the delay resulted in substantial harm and proximately caused pain and suffering. *Sealock v. Colorado,* 218 F.3d 1205 at 1210 (10th Cir. 2000); *Shannon v. Lester,* 519 F.2d 76 at 79 (6th Cir. 1975). To establish a prison official's deliberate indifference to a prisoner's serious medical needs, the tolerable length of delay in providing medical attention depends on the nature of medical need and the reason for delay. *Harris v. Coweta Cnty.,* 21 F.3d 388 at 393 (11th Cir. 1994).

Here, Mr. Waterman fails to present the evidence required to prove that his medical condition was sufficiently serious or that the Medical Defendants were deliberately indifferent to such a serious medical need. Pursuant to the undisputed facts, there was no obvious risk of harm to Mr. Waterman's health, and therefore no deliberate indifference. Additionally, as reflected in the statement of uncontroverted facts, Mr. Waterman was

15

provided with and continues to be provided with consistent medical attention and supervision. Mr. Waterman was provided with numerous x-rays, an MRI, an orthopedist visit, and provided many avenues of care. Rather the undisputed facts establish he either refused or was completely noncompliant with the recommended course of treatment.

For example, Mr. Waterman initially received an x-ray and evaluation by medical providers. The x-ray results showed normal alignment and mineralization with no fracture or aggressive bony lesions. Neither were there any signs of other degenerative changes. SOF ¶ 6. During examinations, medical providers observed normal symmetry of Mr. Waterman's shoulders, no deformities, and he did not grimace throughout his assessment. SOF ¶ 7.

Despite Mr. Waterman not exhibiting signs of grave injury, medical providers attempted to provide him with a treatment plan to address his complaints, which included medication, activity limitation, and physical therapy. SOF ¶ 9, 11. It was Mr. Waterman's decision not to pursue these recommendations. Mr. Waterman was presented with a refusal of treatment form and refused to sign such form. SOF ¶ 19.

Mr. Waterman now alleges, without any supporting evidence, that a delay in the provision of physical therapy has caused him a serious medical injury. SOF ¶ 40. Yet the undisputed facts demonstrate physical therapy was timely recommended for him, and he declined that treatment. SOF ¶ 8, 9, 10. On November 4, 2022, Mr. Waterman argued against physical therapy. SOF ¶ 12.

Mr. Waterman also refused to try medications as a treatment option. On November 9, 2022, Mr. Waterman reported that he wanted his pain medication to stop because it was

16

not working. However, on that same day, the medical room was consulted, and it was discovered that Mr. Waterman had not taken a single dose of his medication. SOF ¶ 13, 14. Following this event, Mr. Waterman further refused his pain medication on November 15, 2022. SOF ¶ 15.

Mr. Waterman clearly demonstrates a pattern of behavior in which he disagrees with the recommendations of medical providers without providing any basis for such disagreement, attempts to mislead medical providers on the efficacy of such medical directives, and completely refuses care from medical providers despite requesting such medical surveillance and care. Additionally, Mr. Waterman had specifically been given the opportunity for physical therapy and disagreed with such provision.

An inmate, such as Mr. Waterman, who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. *Crowley*, 109 F.3d 500 at 502 (8th Cir. 1997). This evidence must show that the delay resulted in substantial harm and proximately caused pain and suffering. *Sealock*, 218 F.3d 1205 at 1210 (10th Cir. 2000); *Shannon v. Lester,* 519 F.2d 76 at 79 (6th Cir. 1975). Mr. Waterman has not put forth any verifying medical evidence indicating substantial harm which proximately caused pain and suffering nor has any evidence been presented which would indicate that the Medical Defendants deliberately delayed care to Mr. Waterman. Mr. Waterman has additionally failed to come forward with expert opinions that establish a detrimental effect from the delay, and there is no evidence of the delay causing an increase in pain. Any injury or substantial harm Mr. Waterman alleges to be derived from omissions from the Medical

17

Defendants can actually firmly be attributed to his own repeated refusals to receive and comply with the care plans of medical professionals. Thus, Mr. Waterman's Eighth Amendment claim against the Medical Defendants fails  as a matter of law.

### IV.    Mr. Waterman has not sufficiently pled an injury submissible under a claim of deliberate indifference.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Deliberate indifference involves both an objective and a subjective component. *Sealock*, 218 F.3d at 1209. The former is met if the deprivation is sufficiently serious, that is, "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999).

Mr. Waterman does not allege that, as a result of the Medical Defendants' actions or omissions, he manifested objective symptoms that could have been interpreted as sufficient to trigger the need for hospitalization or additional treatment, such as signs of bruising, bleeding, or broken bones. *Barron v. Pohlman*, 122 Fed. Appx. 416, 419 (10th Cir. 2005). Even after multiple rounds of evaluation by medical professionals, Mr. Waterman's shoulder was found to be within normal limits of function and was not found to mandate serious or surgical treatment. SOF ¶ 7, 9 16. Mr. Waterman was evaluated by an orthopedist on September 27, 2023. SOF ¶ 35. The orthopedist also reviewed Mr. Waterman's MRI results and provided a recommendation of physical therapy. SOF ¶ 35. Where multiple rounds of evaluation did not identify the requirement of emergency treatment and an

orthopedist did not indicate that Mr. Waterman necessitated immediate surgical intervention, Mr. Waterman's symptoms could not be "so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and no medical professional has mandated treatment different than what was already within Mr. Waterman's original plan of care. *Hunt*, 199 F.3d at 1224.

Even assuming, *arguendo*, that Mr. Waterman's shoulder condition qualifies as "sufficiently serious," his allegations fail to satisfy the subjective prong of the deliberate indifference test. Under the subjective prong, a prison official must have a "sufficiently culpable state of mind." *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 834). However, a prisoner's mere disagreement with a diagnosis or treatment course does not itself state a constitutional violation. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 107). Moreover, "[a] negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Id.* (citing *Estelle*, 429 U.S. at 105-06). Only an individual who "knows of and disregards an excessive risk to inmate health or safety acts with deliberate indifference." *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018) (quoting *Martinez v. Garden*, 430 F.3d 1227, 1230-31 (10th Cir. 2005)).

After initial evaluations by multiple providers, it was observed that Mr. Waterman's shoulders were symmetrical, there were no deformities, and he held normal function. SOF ¶ 6, 7. The initially recommended plan of care included medication, activity restriction, and physical therapy as did the recommended plan of care after Mr. Waterman received an MRI and evaluation by an orthopedist. SOF ¶ 11, 35. Mr. Waterman disagreed with the

19

initial plan of care which included physical therapy, was noncompliant with such care, requested an MRI, received an MRI, and was once again provided with a plan of care which included physical therapy. Mr. Waterman has since received such care. While Mr. Waterman may take issue with the treatment approach taken by his medical providers, "a prisoner's difference of opinion with prison medical personnel regarding the type of treatment he should receive does not rise to a level of a constitutional violation." *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993). Mr. Waterman has not provided any evidence-based allegations that the Medical Defendants were aware of any facts from which an inference could be drawn that a substantial risk of serious harm existed. As such, Mr. Waterman's allegations do not rise to the level of a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825 at 837 (1994).

Mr. Waterman's claim additionally fails because he has not pled or provided any evidence that as a result of any delayed care, he sustained additional pain or permanent damage resulting from his inability to undergo physical therapy. For a claim to succeed, Mr. Waterman must show that the failure to provide adequate care resulted in additional pain or permanent injury. *Wishneski v. Dona Ana County*, 498 Fed.Appx. 854 (10th Cir. 2012). The Medical Defendants have provided Mr. Waterman with continuous care and treatment as exhibited within the uncontroverted facts. The Medical Defendants' efforts to curb Mr. Waterman's pain have included many avenues which have already been stated. Specifically, the Medical Defendants prescribed Mr. Waterman pain medication to prevent him from sustaining any unnecessary discomfort based on his own reports, yet when the Medical Defendants prescribed pain medication, Mr. Waterman stated that the medication

did not work, despite him never actually taking any of the prescribed medication. SOF ¶ 13, 14. Mr. Waterman subsequently refused pain medication to curb any pain or discomfort he experienced. SOF ¶ 15.

In *Wishneski v. Dona Ana County*, the court held that the inmate failed to show deliberate indifference because there was no evidence of additional pain or permanent damage resulting from the inability to perform prescribed physical therapy exercises. *Wishneski*, 498 Fed.Appx. 854 (10th Cir. 2012). Similarly, in *Barron v. Pohlman*, the court found no deliberate indifference where the inmate received extensive medical attention, including physical therapy, and there was no evidence of muscle atrophy or abnormal range of motion. *Barron*, 122 Fed.Appx. 416 (10th Cir. 2005). Mr. Waterman failed to demonstrate that he has sustained any significant or permanent injury as a result of the care provided to him and has put forth no evidence to suggest that such an injury exists. Mr. Waterman has received extensive medical attention, including physical therapy, and thus he fails to establish he suffered a "serious medical need" sufficient to state a constitutional violation. The Medical Defendants are entitled to judgment as a matter of law.

WHEREFORE Defendants respectfully request that this Court grant its Motion for Summary Judgment and for such other and further relief as this Court deems just and proper.

21

SANDBERG PHOENIX & von GONTARD
P.C.

By: */s/ Marcus A. Meyer*
Katrina L. Smeltzer, #26623
Marcus A. Meyer, #79198
4600 Madison Avenue, Suite 1000
Kansas City, MO 64112
816.627.5332
816.627.5532 (Fax)
ksmeltzer@sandbergphoneix.com
mmeyer@sandbergphoneix.com
*Attorneys for Defendant Gordon Harrod, M.D.,*
*Sarah Madgwick and Kelly Knipp*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March 2025, the foregoing was filed electronically with the Clerk of the Court to be served by Operation of the Court's electronic filing system upon the following:

Whitney L. Casement
Stevens & Brand, L.L.P.
wcasement@stevensbrand.com
*Attorneys for KDOC Defendants*

I hereby certify that on this 7th day of March 2025 the foregoing was mailed by United States Postal Service to the following non-participant in Electronic Case Filing:

Brian Waterman, 126456
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, Kansas 67504
*Pro Se Plaintiff*

 /s/ *Marcus A. Meyer*

22