## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BRIAN MICHAEL WATERMAN,**

          **Plaintiff,**

v.

**GORDON HARROD, M.D., et al.,**

          **Defendants.**

Case No. 23-3182-DDC-RES

## MEMORANDUM AND ORDER

Plaintiff Brian Michael Waterman, a prisoner proceeding pro se,[1] brings this civil rights lawsuit under 42 U.S.C. § 1983 against several Kansas Department of Corrections employees (KDOC Defendants),[2] and medical providers (Medical Defendants).[3]  Plaintiff alleges that defendants were deliberately indifferent to his shoulder injury, violating the Eighth Amendment's guarantee of freedom from cruel and unusual punishment.

---

[1]    Plaintiff proceeds pro se.  The court construes his filings liberally and "hold[s] [them] to less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court doesn't "assume the role of advocate for the pro se litigant."  *Hall*, 935 F.2d at 1110.  And our Circuit "'has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'"  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

[2]    The KDOC Defendants are Jennell Buchanan, Nicole Scolari, and Zachary Little.  Doc. 135.  The court directs the Clerk to replace "(fnu) Buchanan" and "(fnu) Little" on the docket with "Jennell Buchanan" and "Zachary Little."

[3]    The Medical Defendants are Dr. Gordon Harrod, Sarah Madgwick, and Kelly Knipp.  Doc. 139.  The court directs the Clerk to replace "(fnu) Harred" and "(fnu) Knipp" on the docket with "Dr. Gordon Harrod" and "Kelly Knipp."

Parties from both ends of the caption have filed motions for summary judgment. The parties also have filed a variety of motions collateral to those dispositive ones. This Order decides them all.

## I.    Factual & Procedural Background

### A.    Threshold Procedural Problems

As a preliminary matter, the court must address the Medical Defendants' motion asking the court to deem their summary judgment facts admitted. Doc. 147. The Medical Defendants' motion contains 41 material facts. Doc. 139 at 2–7. To controvert these facts, our local rules required plaintiff to dispute each fact in an organized, numbered fashion and "refer with particularity to those portions of the record upon which the opposing party relies[.]" D. Kan. Rule 56.1(b)(1); *see also* Fed. R. Civ. P. 56(e)(2) (explaining that the court may "consider the fact undisputed" when a party "fails to properly address another party's assertion of fact"). Plaintiff's summary judgment response doesn't do any of those things. *See generally* Doc. 148. Indeed, the response doesn't even try.

Instead, plaintiff submitted his own Motion for Summary Judgment (Doc. 143) with its own facts. But that won't do. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring party seeking to dispute facts to cite to particular parts of the record); *see also Alford v. Harrod*, No. 24-3022-JWB, 2025 WL 3250876, at *2 (D. Kan. Nov. 21, 2025) (deeming defendants' facts uncontroverted and admitted where pro se plaintiff didn't controvert defendants' facts and instead alleged his own facts); *Campbell v. Meredith Corp.*, 260 F. Supp. 2d 1087, 1096–97 (D. Kan. 2003) (similar). The court is fully mindful that plaintiff is litigating his own claim, but still he must follow the procedural rules. And plaintiff knows this; he's a frequent filer here. Just this year, our court has issued 20 opinions in six different cases of plaintiff's. Plus, he received notices describing summary-judgment procedures and rules from both sets of defendants. Doc. 136; Doc. 142. The

court thus grants the Medical Defendants' Motion to Deem Facts Admitted (Doc. 147) and deems their record-supported facts uncontroverted and therefore admitted.

Relatedly, plaintiff submitted a response to defendants' summary judgment motions, but that response was late—very late. All defendants filed their summary judgment motions on March 7, 2025. Doc. 134; Doc. 138. Under our local rules, plaintiff's response was due 21 days later, on March 28. D. Kan. Rule 6.1(d)(1). Plaintiff didn't file his response until May 21. Doc. 148. To explain his untimeliness, plaintiff wrote, "Cool Aid [sic] was knocked over the motions." *Id.* at 2. Fed. R. Civ. P. 6(b)(1)(B) allows a court to extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Yet plaintiff filed no motion asking the court for an extension of time to file his response; he just filed the response. The Medical Defendants ask the court to disregard or strike this untimely filing. Doc. 149 at 1.

The court agrees with the Medical Defendants. Plaintiff's response is untimely. And his inexplicable failure to file a motion for an extension of time spells doom. A "postdeadline extension *must be upon motion made* and is permissible only where the failure to meet the deadline was the result of excusable neglect." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990) (quotation cleaned up) (emphasis added). Nor does a sugary-beverage fiasco constitute excusable neglect for a two-month delay. The court thus declines to consider plaintiff's response (Doc. 148) at summary judgment and considers the Medical Defendants' motion unopposed.

The court notes that the Medical Defendants are the ones who asked to deem their facts admitted and asked the court to disregard plaintiff's untimely response. The KDOC Defendants haven't made the same requests, but the same reasoning applies with equal force to these defendants. Plaintiff hasn't controverted the KDOC Defendants' facts properly. *See generally*

Doc. 148. Nor has he timely responded to the KDOC Defendants' motion. *See id.* The court thus deems the KDOC Defendants' facts admitted and declines to consider plaintiff's response to the KDOC Defendants' summary judgment motion.[4] With these preliminary matters out of the way, the court turns to the relevant facts.

B. **Summary Judgment Facts**

In July 2022, plaintiff sought treatment at the Hutchinson Correctional Facility for pain in his right shoulder, which he'd injured lifting weights. Doc. 140-1 at 1–2 (Ex. E). While at the Hutchinson facility, plaintiff received an x-ray and physical therapy for his shoulder. Doc. 139-2 at 2, 3 (Harrod Aff. ¶¶ 9, 12). And in December 2022, an MRI was ordered. *Id.* at 3 (Harrod Aff. ¶ 17).

In January 2023, plaintiff transferred to the El Dorado Correctional Facility. Doc. 139-1 at 2 (Ex. A). He had an MRI appointment scheduled for March 8 but, due to an urgent security transport incident, the MRI was rescheduled for March 20. Doc. 139-2 at 3–4 (Harrod Aff. ¶ 21). Later, the facility rescheduled the appointment for March 29 to accommodate an urgent medical transport. *Id.* at 4 (Harrod Aff. ¶ 22). According to Harrod, the MRI "results suggested tendinopathy or partial tear of the supraspinatus." *Id.* (Harrod Aff. ¶ 23). A Department of Corrections note from June 28, 2023, suggests that Harrod requested outpatient orthopedic care for plaintiff. *See* Doc. 140 at 98 (Ex. C).

Plaintiff filed this lawsuit on July 26, 2023. Doc. 1. United States District Judge John W. Lungstrum noted that plaintiff has three strikes under 28 U.S.C. § 1915(g), Doc. 2 at 1 & n.1,

---

[4]      These preliminary decisions render defendants' summary judgment motions unopposed. The court also recognizes that the unopposed nature of the motions—alone—doesn't furnish a sufficient basis to grant summary judgment to defendants. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Instead, the court still must determine whether judgment for defendants is appropriate under Fed. R. Civ. P. 56.

but allowed him to proceed because he alleged serious medical needs and a denial to adequate medical treatment, Doc. 6 at 2–3. Judge Lungstrum then screened plaintiff's Complaint, explained its deficiencies, and gave plaintiff a chance to file an amended complaint. *See generally* Doc. 13. Plaintiff amended his complaint, Doc. 17, and Judge Lungstrum, finding that he needed more information to process plaintiff's claims properly, ordered a *Martinez* report, Doc. 19 at 3. After KDOC filed the *Martinez* report, Doc. 24, plaintiff responded, Doc. 36, and Judge Lungstrum concluded that plaintiff's Eighth Amendment deliberate indifference claim survived, Doc. 38 at 2. The case then was reassigned to the undersigned judge. Doc. 40.

Plaintiff's sole surviving claim alleges that defendants Harrod and Madgwick deliberately delayed plaintiff's MRI from January 2023 to April 2023. Doc. 17 at 5. He alleges Harrod and Madgwick didn't follow up on his treatment, "refused to verify underlying facts that they strongly suspect to be true," and allowed their staff to go rogue. *Id.* at 6. Plaintiff also alleges that a specialist had prescribed physical therapy, but El Dorado employees didn't follow that directive.[5] *Id.* at 5. Plaintiff further alleges that, despite the MRI showing a partial tear, defendant Knipp discontinued plaintiff's bottom-bunk restriction for defendant Little. *Id.* Defendants Scolari and Buchanan then forced plaintiff to use a top bunk and threatened plaintiff if he did not comply. *Id.* Plaintiff reinjured his shoulder climbing up and down from the top bunk. *Id.* Hutchinson staff had ordered extra-length handcuffs for plaintiff, but El Dorado did not follow this procedure, instead using regular handcuffs that caused plaintiff additional pain. *Id.* Plaintiff alleges he's experienced pain for the entirety of this ordeal. *Id.*

---

[5] Plaintiff also complains about Lansing Correctional Facility denying him physical therapy. Doc. 17 at 5. But he hasn't sued anyone from Lansing, so the court ignores this accusation.

Defendants now have moved for summary judgment.[6]  Doc. 134; Doc. 138.  Plaintiff also

has moved for summary judgment.  Doc. 143.  The court recites the summary judgment legal

standard, next.

## II.        Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no

genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  This standard dictates that the court "view the evidence

and make inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*,

625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243,

1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a

verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is

essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.*

*Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the

moving party "'need not negate the non-movant's claim, but need only point to an absence of

evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO,*

---

[6]        The Medical Defendants submitted a reply supporting their motion for summary judgment.  Doc. 149.  Plaintiff improperly has characterized this filing as a sur-reply and moved to strike it.  Doc. 152. It's not a sur-reply, so the court denies plaintiff's motion.

*Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed*, 312 F.3d at 1194–95.

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671).  Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.  Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

## III.    Analysis

The court begins its analysis, as it must, with the KDOC Defendants' advancement of sovereign immunity as a defense, which, if it applies, would deprive the court of subject matter jurisdiction.  The court then takes up the KDOC Defendants' argument that some of plaintiff's

7

injunctive relief requests are moot.  It concludes its analysis with defendants' argument that plaintiff failed to exhaust his administrative remedies.

### A.    Sovereign Immunity

Plaintiff seeks monetary damages.  Doc. 17 at 10.  He also sues the KDOC Defendants in their official capacities.  *Id.* at 3.  He can't do that.  Claims against the KDOC Defendants in their official capacity "are de facto claims against the Kansas Department of Corrections, which is an agency of the State of Kansas and protected by Eleventh Amendment immunity."  *Winter v. Mansfield,* No. 19-cv-03236-HLT-TJJ, 2021 WL 4354617, at *2 (D. Kan. Aug. 27, 2021), *aff'd*, No. 21-3171, 2022 WL 3652464 (10th Cir. Aug. 25, 2022).  And Eleventh Amendment immunity deprives the court of subject matter jurisdiction.  *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009).  A state may waive this sovereign immunity.  *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).  And separately, Congress may abrogate a state's sovereign immunity.  *Id.* at 253–54.  "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  *Id.* at 254.  Neither exception applies here.[7]  *Winter*, 2021 WL 4354617, at *2.

Plaintiff here hasn't demonstrated waiver or abrogation.  So, the court dismisses plaintiff's claims for monetary damages asserted against the KDOC Defendants in their official capacities.  The court lacks subject matter jurisdiction over them.

### B.    Mootness

---

[7]    The court recognizes that *Ex Parte Young* provides a third exception to Eleventh Amendment immunity.  Under "*Ex parte Young*, a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief."  *Frank v. Lee*, 84 F.4th 1119, 1131 (10th Cir. 2023) (quotation cleaned up).  This exception doesn't save plaintiff's claims against the KDOC Defendants in their official capacities because, as explained shortly, plaintiff doesn't seek prospective injunctive relief.  His injunctive relief requests are moot.

Plaintiff seeks many forms of injunctive relief from KDOC Defendants.  Doc. 17 at 9.

The problem with this request, as the KDOC Defendants point out, is that plaintiff now resides at

Hutchinson Correctional Facility.  Doc. 85.  The KDOC Defendants work at El Dorado.  Doc. 17

at 3; Doc. 24-5 at 1 (Little Decl. ¶ 3); Doc. 24-6 at 1 (Scolari Decl. ¶ 3).  An "an inmate's

transfer from one prison to another generally renders moot any request for injunctive relief

against the employees of the original prison concerning the conditions of confinement."

*Whitman v. Beagle*, No. 23-3029-JWL, 2023 WL 8354882, at *3 (D. Kan. Dec. 1, 2023).  So, the

court denies plaintiff's requests for injunctive relief against the KDOC Defendants as moot.

With these appetizer arguments resolved, the court turns to the meat of its analysis:

exhaustion.

### C.    Exhaustion

Defendants argue that they're entitled to summary judgment because plaintiff has failed

to exhaust his administrative remedies.  Doc. 135 at 12–14; Doc. 139 at 10–13.  The Prison

Litigation Reform Act governs lawsuits about prison conditions brought under 42 U.S.C. § 1983

by incarcerated persons.  42 U.S.C. § 1997e(a).  The PLRA provides that no "action shall be

brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."  *Id.*  "In

enacting the PLRA, Congress [mandated] an 'invigorated' exhaustion provision."  *Ross v. Blake*,

578 U.S. 632, 641 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)).  Exhaustion "is

mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Jones v.*

*Bock*, 549 U.S. 199, 211 (2007).

"The only limit to § 1997e(a)'s [exhaustion] mandate is the one baked into its text:  An

inmate need exhaust only such administrative remedies as are 'available.'"  *Ross*, 578 U.S. at

648 (quoting 42 U.S.C. § 1997e(a)).  "An inmate who begins the grievance process but does not

complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Failure "to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Thus, the "defendant bears the burden of 'proving that the plaintiff did not exhaust his administrative remedies[.]'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quotation cleaned up) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). Only "once the defendant has carried that burden" does "'the onus fall[] on the plaintiff to show that remedies were unavailable to him.'" *Id.* (quoting *Tuckel*, 660 F.3d at 1254).

Kansas law provides two distinct avenues of administrative exhaustion: Article 15 and Article 16. Article 15 governs inmate grievances covering "a broad range of matters that directly affect the inmate, including" complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility. Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B). Article 16 applies to personal injury claims. Kan. Admin. Regs. § 44-16-104a. Article 15 applies to § 1983 claims like this one. *See, e.g.*, *Alford v. Harrod*, No. 24-3022-JWB, 2025 WL 3250876, at *6 (D. Kan. Nov. 21, 2025); *Lynn v. Kelly*, No. 21-3094, 2022 WL 1043752, at *1 (10th Cir. Apr. 7, 2022).

Before an inmate can utilize the grievance procedure, Article 15 requires him to "attempt[] to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis." Kan. Admin. Regs. § 44-15-101(b). After the informal resolution, Article 15 prescribes a three-level grievance procedure:

(1) **Level 1:** An inmate first must "submit the grievance report form to an appropriate unit team member of the facility."

> (2) **Level 2:** An inmate then must "submit the grievance report form to the warden of the facility."
>
> (3) **Level 3:** "If not resolved, the grievance may be next submitted to the office of the secretary of corrections. Either a response to the grievance or referral of the matter to a deputy secretary of corrections for additional investigation, if necessary, shall be made by the warden."

Kan. Admin. Regs. § 45-101(d)(1)–(3).

To sustain their summary judgment burden, the KDOC Defendants submit that they have reviewed the entire KDOC record for grievances filed by plaintiff and proffered an affidavit from Darcie Holthaus, the KDOC "designee for responding to grievance appeals[.]" Doc. 135-1 at 1 (Holthaus Aff. ¶ 2); *see also Lynn v. Willnauer*, No. 19-cv-03117-HLT, 2023 WL 3568662, at *10 (D. Kan. May 19, 2023) ("Courts in this district have found that a defendant satisfies the initial burden to show that a plaintiff failed to exhaust administrative remedies where the defendant provides a KDOC records custodian affidavit that explains that they reviewed the grievance records and found evidence that a plaintiff availed himself of the grievance process but did not complete it."). Similarly, the Medical Defendants have submitted the grievance documents pertinent to them. *See, e.g.*, Doc. 139-4 (Ex. J).

Based on these documents, the court constructs plaintiff's grievance history, below.

### 1.     Grievance History

Plaintiff filed an "Emergency Grievance" on July 15, 2023. Doc. 135-1 at 14–15 (KDOC000163–64). As relevant here, the grievance claimed that Harrod wasn't providing him with adequate medical care and had left him with a torn shoulder muscle. *Id.* On August 1, the El Dorado warden determined that plaintiff's complaint wasn't an emergency. *Id.* at 13. (KDOC000162). The warden forwarded the complaint to a health-services employee. *Id.* The health-services employee determined plaintiff's MRI didn't show a full tear. *Id.* at 12

11

(KDOC000161).  She also explained that the facility had scheduled plaintiff for a visit with an orthopedic provider and would reschedule that visit after cancelling the original appointment.  *Id.*

On August 21, plaintiff submitted grievance 274685031, requesting extra-length cuffs. *Id.* at 7 (KDOC000142).  An El Dorado staff member closed this grievance on August 25.  *Id.*

Also on August 21, plaintiff submitted grievance 274718261, which mentioned his bottom-bunk restriction.  *Id.* at 5 (KDOC000140).  On November 6, an El Dorado staff member responded, "Time has elapsed.  Please re-submit if the issue has not been resolved or is still relevant."  *Id.* at 6 (KDOC000141).  The staff member then closed the grievance.  *Id.*

On September 11—though the warden had determined that plaintiff's grievance wasn't an emergency—plaintiff appealed to the Secretary of Corrections anyway.  *Id.* at 2 (Holthaus Aff. ¶ 7); *id.* at 10 (KDOC000159); *id.* at 16 (KDOC000165).  The Secretary issued an unofficial response on October 13, concluding that plaintiff was "being appropriately treated."  *Id.* at 9 (KDOC000158).

On October 3, plaintiff transferred to Lansing Correctional Facility.  Doc. 139-1 at 2 (Ex. A).  On December 18, the Secretary received another appeal from plaintiff, complaining that he didn't have extra-length handcuffs, the doctor refused to see him, his shoulder still hurt, and guards hadn't followed medical orders.  Doc. 135-1 at 18–19 (KDOC000167–68).  The next day, Holthaus, the KDOC grievance expert, forwarded the grievance to the Lansing warden, noting that there was no evidence that plaintiff had sought assistance from Lansing staff.  *Id.* at 17 (KDOC000166).

With plaintiff's grievance history identified, the court next considers whether plaintiff properly exhausted Article 15's three-level grievance procedure.

## 2.    Compliance with Grievance Procedure

Start with the July 15 emergency grievance.  The Medical Defendants insist that plaintiff didn't exhaust his administrative remedies with this grievance because after the warden determined that the emergency grievance wasn't, in fact, an emergency, plaintiff appealed to the Secretary.  Doc. 139 at 11.  In the Medical Defendants' view, plaintiff needed to "pursue[] the proper administrative remedy after" the warden told him the grievance didn't qualify as an emergency.  *Id.*

KDOC allows inmates to file emergency grievances for "those grievances for which disposition according to the regular time limits would subject the inmate to a substantial risk of personal injury, or cause other serious and irreparable harm to the inmate."  Kan. Admin. Regs. § 44-15-106.  If such a risk exists, the regulations allow an inmate in an emergency situation to "bypass the prerequisite of informal resolution if going to the unit team would not obtain a solution to the problem"  *Id.*  Once submitted, emergency grievances receive expedited treatment.  *Id.*  Prison staff forward emergency grievances "immediately, without substantive review, to the level at which corrective action can be taken."  *Id.*  These regulations also provide guidance for a scenario like this one, where an inmate wrongly files a grievance as an emergency.  In that situation, the "grievance may then be processed from that point on as a regular grievance."  *Id.*  And if "necessary for a proper response the grievance may be sent for processing at a lower level."  *Id.*

Here, plaintiff submitted an emergency grievance to the El Dorado warden.  The warden concluded that plaintiff's situation didn't qualify as an emergency and forwarded the grievance to a staff member—*i.e.* defendant Madgwick, a health-services staff member.  Doc. 135-1 at 13 (KDOC000162).  So, plaintiff's emergency grievance went from Level 2 to Level 1.  But plaintiff didn't appeal Madgwick's determination to the warden—that is, he skipped Level 2 and

went straight to Level 3. This maneuver violated the just-outlined emergency-grievance regulation, which provides that after prison staff determine that a grievance doesn't qualify as an emergency, the grievance is "processed from that point on as a regular grievance." Kan. Admin. Regs. § 44-15-106.

Plaintiff's failure to complete the grievance process bars his claim. *Jernigan*, 304 F.3d at 1032; *see also Uzochukwu v. Roody*, 472 F. App'x 865, 867 (10th Cir. 2012) (concluding plaintiff failed to exhaust where he filed emergency grievances returned unanswered as non-emergencies and plaintiff failed to resubmit the grievances); *Markovich v. Correct Care Sols.*, 406 F. App'x 264, 266 (10th Cir. 2010) (concluding plaintiff failed to exhaust where he failed to proceed through ordinary grievance process after prison officials concluded his emergency grievance didn't qualify as emergency); *Brewer v. Mullin*, 130 F. App'x 264, 265–66 (10th Cir. 2005) (rejecting plaintiff's attempt to bypass prison grievance system with improper emergency grievance); *id.* ("[Plaintiff] may believe that prison officials erred in deciding his issues were not emergencies, but that does not mean that he can simply ignore their determination and opt out of the grievance procedure.").

Next: plaintiff's grievance about extra-length cuffs. Plaintiff submitted this grievance in August 2023, when he resided at the El Dorado facility. Doc. 135-1 at 7 (KDOC000142). Plaintiff then moved to Lansing in October 2023. Doc. 139-1 at 2 (Ex. A). He appealed to the Secretary of Corrections in December 2023 and mentioned extra-length cuffs. Doc. 135-1 at 18 (KDOC000167). But there's zero evidence that plaintiff ever appealed this grievance to the warden at El Dorado after the staff denied it—skipping Level 2. Nor is there evidence that plaintiff sought any assistance from the staff at Lansing after his transfer—skipping Level 1. *Id.* at 17 (KDOC000166). Ample authority "supports the concept that inmates are not necessarily

excused from exhaustion requirements, though they change facilities." *See, e.g.*, *Lakhumna v. Messinger*, No. 18-CV-81 DN, 2023 WL 2504583, at *6 (D. Utah Mar. 14, 2023) (collecting cases). Plaintiff thus has failed to exhaust his complaints about his extra-length cuffs.

And, finally, the same goes for plaintiff's grievance about his bottom-bunk restriction. Plaintiff submitted this grievance in August 2023, and El Dorado staff closed this grievance in November because time had lapsed. Doc. 135-1 at 6 (KDOC000141). Plaintiff didn't appeal this outcome to the El Dorado warden—perhaps because, by November, he'd moved to Lansing. And nothing shows that he ever took this bottom-bunk issue up with Lansing's staff.

In sum, plaintiff has failed to exhaust his claims that defendants Harrod and Madgwick failed to provide him with adequate medical care. Nor has he exhausted his claims about the extra-length handcuffs or his claims that defendants Buchanan, Scolari, Little, and Knipp were deliberately indifferent to a serious medical need by forcing plaintiff to use a top bunk despite a bottom-bunk restriction. This failure to exhaust bars his claims, and defendants deserve summary judgment.

And, given plaintiff's failures to exhaust, the court denies plaintiff's Motion for Summary Judgment (Doc. 143), for self-evident reasons.

## IV.     Conclusion

The court grants the KDOC Defendants' Motion for Summary Judgment (Doc. 134) and the Medical Defendants' Motion for Summary Judgment (Doc. 138). As a result, the court denies plaintiff's Motion for Summary Judgment (Doc. 143).

The court also grants the KDOC Defendants' Motion to Seal (Doc. 144) plaintiff's medical records. *See Myers v. Knight Protective Serv., Inc.*, 774 F.3d 1246, 1249 (10th Cir. 2014) (granting motion to seal medical records). And plaintiff has filed two requests for a status

update, asking about the status of the pending summary judgment motions. The court grants

those motions—providing this Order as plaintiff's status update.

**IT IS THEREFORE ORDERED BY THE COURT THAT** KDOC Defendants'

Motion for Summary Judgment (Doc. 134) is granted.

**IT IS FURTHER ORDERED THAT** Medical Defendants' Motion for Summary

Judgment (Doc. 138) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Summary Judgment (Doc.

143) is denied.

**IT IS FURTHER ORDERED THAT** KDOC Defendants' Motion to Seal (Doc. 144) is

granted. The Clerk is directed to remove the provisional designation from the following

documents, which will remain under seal permanently: Doc. 140; Doc. 140-1; Doc. 140-2; Doc.

140-3; Doc. 140-4; Doc. 140-5; Doc. 140-6.

**IT IS FURTHER ORDERED THAT** Medical Defendants' Motion to Deem Facts

Admitted (Doc. 147) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Strike (Doc. 152) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Status Update (Doc. 158) is

granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Status Update (Doc. 159) is

granted.

**IT IS FURTHER ORDERED THAT** the Clerk must replace "(fnu) Buchanan" and

"(fnu) Little" on the docket with "Jennell Buchanan" and "Zachary Little."

**IT IS FURTHER ORDERED THAT** the Clerk must replace "(fnu) Harred" and "(fnu)

Knipp" on the docket with "Dr. Gordon Harrod" and "Kelly Knipp."

16

**IT IS SO ORDERED.**

**Dated this 7th day of January, 2026, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**